WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | CR-24-01182-TUC-AMM-MAA |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Brian Thomas Balda, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Dismiss – Speedy Trial Act Violation (Doc. 66). The Government filed a Response (Doc. 77) and Defendant filed a Reply (Doc. 80). A hearing was held on December 18, 2024. Defendant was present with counsel. Deputy U.S. Marshal Joseph Pullen testified for the Government. Defendant testified on his own behalf. Admitted into evidence, without objection, were Government's Exhibit 1 (medical study timeline) and Defendant's Exhibit A (JPATS communication). The parties filed supplemental briefs on December 20 and 21, 2024. (Docs. 85 and 86).

Defendant argues his in-custody transportation for a competency evaluation was unreasonably delayed to the Medical Detention Center in Los Angeles, California, ("MDC-Los Angeles") and then further delayed on the trip back to the Central Arizona Florence Correctional Facility ("CCA-Florence"). Defendant calculates 77 days have passed on the Speedy Trial Act clock, requiring dismissal under the Act's 70-day deadline for trial. The Government argues the transport time was reasonable due to security and safety concerns posed by Defendant and that fewer than 70 days have passed on the Speedy Trial clock.

Upon consideration of the briefing, evidence and arguments, and upon review of

excluded time in this action, this Court recommends that the motion be denied.

## I.     FACTUAL RECORD

Defendant was charged by Complaint on February 15, 2024, with one count of Cyberstalking in violation of 18 U.S.C. § 2261A(2). Doc. 1. He appeared for his Initial Appearance on February 20, 2024, and was ordered detained pending further proceedings. Docs. 6 and 9. He has been housed at CCA-Florence.

Following his Initial Appearance, Defendant was indicted on two charges on March 13, 2024, Cyberstalking in violation of 18 U.S.C. § 2261A(2), as alleged in the Complaint, and Interstate Stalking in violation of 18 U.S.C. § 2261A(1), an additional charge not contained in the Complaint. Doc. 15. Defendant's first appearance before the Court on the Indictment was his arraignment on April 5, 2024. Doc. 18.

By Order signed on July 8, 2024, but filed into the Court's record on July 9, 2024, the Court committed Defendant to the custody of the Attorney General for a competency evaluation under 18 U.S.C. § 4241(b). Doc. 40. The Order directed the United States Marshals Service ("USMS") to coordinate with the Bureau of Prisons ("BOP") arrange transportation of the defendant to the designated facility. *Id.* USMS recorded its receipt of the Order as of July 8, 2024. Government's Exhibit 1. The same day, July 8, 2024, USMS submitted a request to BOP to designate Defendant to a BOP facility for the evaluation. *Id.* BOP acknowledged receipt of the designation request on July 9, 2024, and, the same day, submitted a request to the USMS Justice Prisoner and Alien Transportation System ("JPATS") for transportation of Defendant to the designated facility. *Id.*

Thereafter, JPATS submitted a notice that more time would be needed to transport Defendant. Government's Exhibit 1, p. 2; Defendant's Exhibit A. USMS recorded its receipt of the notice on July 24, 2024. Government's Exhibit 1, p. 2. The notice reads:

> BRIAN BALDA … will not arrive until 08/02/2024. The current movement request deadline is: 07/24/2024.
>
> This Arrival Date Notification is provided due to the following reason(s):

- 2 -

> An initial itinerary has been devised utilizing regular means of travel, and the inmate will not be able to reach his/her destination until the date listed.
>
> This change is in the best interest of the government with the most efficient utilization of governmental resources. Maximizing use of regular travel for the transportation of prisoners creates the least burden on local US Marshals regarding both manpower and financial assets. This burdens the local USMS District by forcing them to escort prisoners through Commercial Air, which is a higher risk to the public and it significantly increases the overall cost of movement. …

Defendant's Exhibit A; *see also* Doc. 80-1; Hearing Transcript ("HT") at 20:24-21:1.

Defendant arrived at MDC-Los Angeles on August 7, 2024. Government's Exhibit 1; HT 11:11-14. On September 18, 2024, upon completion of the competency evaluation, the Court ordered that Defendant be transported back to CCA-Florence. Doc. 51. Defendant arrived back at CCA-Florence on October 7, 2024. Government's Exhibit 1; HT 11:11-14, 34:20-21.

Defendant testified he was transported by bus at the end of July from CCA-Florence to a detention facility in Pahrump, Nevada. HT 33:23-34:2, 34:3-6. At Pahrump, he waited one week to be moved again. HT 33:23-34:2-6. From Pahrump, he was transported by bus to Victorville, California, where, after about an hour, he was placed in a van and driven to MDC-Los Angeles. *Id.*

Defendant testified that, for the return trip, he was transported by van from MDC-Los Angeles to Victorville, California, where he was placed on a bus and taken back to Pahrump, Nevada. HT 34:11-13. He was in Pahrump "a little over a week" and, while there, he had a heart episode and was hospitalized for three days. HT 17:12-23, 34:15-16. He was in the hospital October 1-3, 2024. Government's Exhibit 1; HT 11:11-14, 17:12-23. Some time after his hospital discharge, he was transported back to CCA-Florence. HT 34:20-21. Defendant confirmed he arrived back at CCA-Florence on October 7, 2024. *Id.*; *see also* Government's Exhibit 1 & HT 17:24-25.

Deputy U.S. Marshal Joseph Pullen testified that USMS had security and public safety concerns arising from the nature of Defendant's charges and his background,

criminal history, and behavior.  HT 14:14-15:6, 15:19-23, 16:1-7.  Deputy Pullen testified that, for the protection of the public, Defendant was transported by non-commercial means. HT 16:4-7. Deputy Pullen testified, however, that he was unaware of the means by which Defendant was transported.  HT 27:8-13, 30:7-10.  He testified his knowledge of any security or safety concerns came from the JPATS notice at Defendant's Exhibit A.  HT 28:4-7, 31:15-18.  Deputy Pullen did not have any knowledge of any discussions or determinations concerning Defendant's risk to the public. HT 28:4-12.

## II.    THE SPEEDY TRIAL ACT

The Speedy Trial Act sets a deadline of 70 days in which to commence trial: *"In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."*  18 U.S.C. § 3161(c)(1).  The Act provides for a number of exclusions from the 70-day clock.  18 U.S.C. § 3161(h)(1).  If trial does not start within 70 non-excludable days, the case is to be dismissed. 18 U.S.C. § 3162(a)(2)

"Delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded from the Speedy Trial clock.  18 U.S.C. § 3161(h)(1)(D).  "[T]he day of the motion's filing, the period in which the motion was pending, and the day the motion was resolved" are excluded. *United States v. Daychild,* 357 F.3d 1082, 1093-94 (9th Cir. 2004).

Delay for competency proceedings, including examinations, is excluded. 18 U.S.C. § 3161(h)(1)(A).   Delay for transportation of a defendant to and from places of examination is excluded, except that "any time consumed in excess of ten days from the date [of] an order … directing such transportation … and defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F).  The Government can rebut the presumption, making excess transport time excludable, by showing the time was reasonable under the circumstances. *United States v. Taylor,* 821

- 4 -

F.2d 1377, 1384 (9th Cir. 1987) (reversed on other grounds, 487 U.S. 326 (1988)). Unreasonable transportation delay is counted toward the 70-day limit. *Id.*

### III.     DISCUSSION

#### The Transportation Time In Issue

For the trip to MDC-Los Angeles, Defendant counts the transport time from the date the commitment Order (Doc. 40) was signed, 7/8/2024, including the date of the order and the date of arrival, 8/7/2024, for a total 31 days.  The Government starts the transport time on 7/11/2024, based on a JPATS's notice to USMS on 7/10/2024 that transportation had been arranged, and it and excludes the date of arrival, 8/7/2024, for a total 27 days.

For the return trip, Defendant counts the transport time from the date of the Court's transport Order (Doc. 51), 9/18/2024, through and including the date of arrival back at CCA-Florence, 10/7/2024, and, due to uncertainty of the arrival date at the time of filing the Motion to Dismiss, adds two days based on when "the Court noted its awareness of [Defendant's] return" in the Order dated 10/9/2024 setting a status conference (Doc. 53), for a total 22 days.  The Government does not offer a calculation for the return trip, as it argues the return trip was subsumed by other excluded time.

The Court will assume, without deciding, that the date of the commitment Order (Doc. 40) is 7/8/2024, when the Order was signed by the Court and received by USMS, as opposed to 7/9/2024 when the Order was filed with the Clerk of the Court.  The Order directed USMS to "[p]romptly coordinate with the Bureau of Prisons to effectuate this Order and arrange transportation of the defendant to the designated facility." Doc. 40. USMS promptly requested that BOP designate Defendant to a facility for examination, and BOP promptly designed Defendant to a facility by no later than 7/9/2024.  The Court acknowledges Defendant's transportation could not have started until he was designated to a facility to which he could be transported.  However, in light of the statutory language "from the date [of the] order directing such transportation," the Court applies 7/8/2024 as the start of the transport period for the trip to MDC-Los Angeles.  18 U.S.C. § 3161(h)(1)(F).  The Court finds the transport period for the return trip started at the Court's

return Order on 9/18/2024 directing USMS to transport Defendant back (Doc. 51).

Defendant arrived at MDC-Los Angeles on 8/7/2024. Government's Exhibit 1; HT 11:11-14. Defendant arrived back at CCA-Florence on 10/7/2024. Government's Exhibit 1; HT 34:20-21. Thus, the travel time is 30 days for the trip to MDC-Los Angeles and 19 days for the return trip. *See* 18 U.S.C. § 3161(h)(1)(F) (referring to transport time "from the date of [the] order"). There is no dispute that 10 days for each trip is reasonable, leaving in issue 20 days for the trip to MDC-Los Angeles and 9 days for the return trip.

### When the Speedy Trial Clock Starts

The parties disagree over when the Speedy Trial clock starts. When a defendant is indicted prior to arrest, the clock starts at the arraignment. *United States v. Haiges,* 688 F.2d 1273, 1274 (9th Cir. 1982). When, as here, "the defendant is arrested prior to indictment, and makes an initial appearance before a magistrate who orders him held to answer the charges in the district court, the seventy-day pretrial period runs from the date of his indictment." *Id.* The triggering date is not included in the calculation or, in other words, is Day Zero. *United States v. Antoine,* 906 F.2d 1379, 1380 (9th Cir. 1990).

Here, the addition of the Interstate Stalking charge in the Indictment adds some complexity to when the Speedy Trial clock starts. The Government argues the clock restarted at the arraignment because the Indictment added a new charge and Defendant's first appearance on all charges for trial was at the arraignment. Defendant argues the clock started at the Indictment because the Indictment is substantially the same as the Complaint in that the two charges are under the same statute and arise from the same alleged conduct. Neither party offers authority addressing the 70-day clock where, as here, the defendant has an initial appearance on a Complaint but the Indictment includes not only the charge in the Complaint but also a charge not included in the Complaint.

The Ninth Circuit has decided this issue with respect to superseding indictments. "[C]harges in a superseding indictment not required to be joined with the original charges come with a new seventy-day clock under the Speedy Trial Act." *United States v. Thomas,* 726 F.3d 1086, 1091 (9th Cir. 2013) (adopting the reasoning of *United States v. Alford,*

142 F.3d 825, 829 (5th Cir. 1998) (affirming dismissal of charges in indictment as beyond the 70-day trial deadline but finding additional charges in superseding indictment were within their own later 70-day clock)).  In *Thomas,* the Court applied the double-jeopardy standard to determine whether the charges were "required to be joined." *Id.*  Applying *Thomas* here, if the Cyberstalking and Interstate Stalking charges are distinct such that the government could charge each in a separate case, the clock on the Cyberstalking charge starts with the Indictment (*Haiges,* 688 F.2d at 1274) but, because Defendant appeared for the first time on the Interstate Stalking charge at the arraignment, the clock for the Interstate Stalking charge starts at the arraignment (*id.*).

"For purposes of double jeopardy, the test to be applied to determine whether there are two offenses or only one is whether each [statutory] provision requires proof of an additional fact which the other does not." *United States v. Jose,* 425 F.3d 1237, 1241 (9th Cir. 2005) (quoting *Blockburger v. United States,* 284 U.S. 299, 304 (1932)) (internal quote marks omitted).  Here, Interstate Stalking requires proof of a fact that Cyberstalking does not, that the defendant traveled in interstate or foreign commerce.  18 U.S.C. § 2261A(1).  Cyberstalking requires proof of a fact that Interstate Stalking does not, that the defendant used the mail or interactive computer service, electronic communication service or electronic communication system, or any other facility of interstate or foreign commerce.  18 U.S.C. §§ 2261A(2); *see also* Indictment (Doc. 15) (alleging these distinct facts).

The Court therefore finds the clock started on the Cyberstalking charge at the Indictment and on the Interstate Stalking charge at the arraignment.

**Time On The Clock Before The Transportation**

As calculated below, starting from the Indictment, 43 days ran on the Speedy Trial clock for the Cyberstalking prior to the time Defendant was committed to the custody of the Attorney General for competency evaluation (and prior to his transportation) (Doc. 40), leaving 27 days for trial on that charge as of that time.  Starting from the arraignment, 20 days ran on the clock for the Interstate Stalking charge up to the commitment order, leaving 50 days for trial on that charge as of that time.

| Date | Event | Clock Stopped (18 U.S.C. § 3161) | STA Clock (days) |
|---|---|---|---|
| 2/16/2024 | Arrest on Complaint (Cyberstalking) | | 0 |
| 2/20/2024 | Initial Appearance on Complaint (Doc. 6) | | 0 |
| 3/13/2024 | Indictment (Doc. 15) (Cyberstalking and Interstate Stalking) | | 0 |
| 4/5/2024 | Arraignment on Indictment (Doc. 18) | | Cyberstalking: 33 (3/13/2024 – 4/26/2024) <br><br> Interstate Stalking: 0 |
| 4/26/2024 | Motion for Determination of Counsel (Doc. 19) | 4/26/24 – 5/1/2024 <br><br> § 3161(h)(1)(D) | Cyberstalking: 43 (3/13/2024 – 4/26/2024) <br><br> Interstate Stalking: 20 (4/5/2024 – 4/26/2024) <br><br> ** Excluding date of indictment/arraignment and date the motion (Doc. 19) was filed. *Antoine,* 906 F.2d at 1380; *Daychild,* 357 F.3d at 1093-94. |
| 5/1/2024 | Order Denying Motion for Determination of Counsel (Doc. 23) | | |
| 5/1/2024 | Motion to Determine Competency and Motion to Seal (Docs. 24, 25) | 5/1/2024 – 5/6/2024 <br><br> § 3161(h)(1)(D) | |
| 5/2/2024 | Amended Motion to Determine Competency and Motion to Seal (Docs. 26, 27) | 5/2/2024 – 5/6/2024 <br><br> § 3161(h)(1)(D) | |

| Date | Event | Date Range | |
|---|---|---|---|
| 5/6/2024 | Order Granting Motion to Determine Competency (Doc. 32) | 5/6/2024 – 10/17/2024<br><br>§ 3161(h)(1)(A) | |
| 5/6/2024 | Motion for Withdrawal of Counsel and Motion to Seal (Docs. 33, 34) | 5/6/2024 – 5/22/2024<br><br>§ 3161(h)(1)(D) | |
| 5/22/2024 | Order Granting Motion for Withdrawal of Counsel (Doc. 38) | | |
| 6/12/2024 | Status Conference Re Motion to Determine Competency (Doc. 39)<br><br>Defendant Makes Oral Motion to Withdraw Motion to Determine Competency | | |
| 7/9/2024 | Order of Commitment for Further Competency Evaluation (Doc. 40) and Denial of Oral Motion to Withdraw Motion to Determine Competency | | |
| 9/3/2024 | Motion to Withdraw as Counsel (Doc. 49) | 9/3/2024 – 10/17/2024<br><br>§ 3161(h)(1)(D) | |
| 9/18/2024 | Order to Transport Defendant Back to Arizona (Doc. 51) | | |
| 10/8/2024 | Motion to Withdraw Motion to Withdraw | 10/8/2024 – 10/17/2024 | |

|  |  |  |  |
|---|---|---|---|
|  | as Counsel (Doc. 52) | § 3161(h)(1)(D) |  |
| 10/16/2024 | Motion for Pretrial Release (Doc. 55) | 10/16/2024 – 11/15/2024<br><br>§ 3161(h)(1)(D) |  |
| 10/17/2024 | Competency Hearing<br><br>Court Grants Motion to Withdraw Motion to Withdraw as Counsel and Finds Defendant Competent (Doc. 57) |  |  |
| 10/30/2024 | Motion to Dismiss Re: Speedy Trial Act (Doc. 66) | 10/30/2024 (pending disposition)<br><br>§ 3161(h)(1)(D) |  |
| 11/8/2024 | Order Granting Detention Hearing on Motion for Pretrial Release (Doc. 75) |  |  |
| 11/15/2024 | Detention Hearing. Court Denies Motion for Pretrial Release (Doc. 79) |  |  |

The Court finds the Speedy Trial clock has been stopped continuously from 4/26/2024 to the present time, as follows:

- Motion for Determination of Counsel (Doc. 19) (4/26/24 – 5/1/2024);
- Motion to Determine Competency (Docs. 24, 25) (5/1/2024 – 5/6/2024);
- Amended Motion Re: Competency (Docs. 26, 27) (5/2/2024 – 5/6/2024);
- Order For Competency Evaluation (Doc. 32) (5/6/2024 – 10/17/2024);
- Motion for Withdrawal of Counsel (Docs. 33, 34) (5/6/2024 – 5/22/2024);
- Motion to Withdraw as Counsel (Doc. 49) (9/3/2024 – 10/17/2024);
- Motion for Pretrial Release (Doc. 55) (10/16/2024 – 11/15/2024);

- 10 -

- Motion to Dismiss Re: Speedy Trial Act (Doc. 66) (10/30/2024 – present).

Defendant calculates 45 or 46 days ran on the clock before the commitment Order. *See* Motion (Doc. 66) (calculating 45 days), Reply (Doc. 46) (calculating 46 days). Defendant's calculation appears to include the filing date of the Motion for Determination of Counsel (Doc. 19), which stopped the clock on 4/26/2024 and which should be excluded (*Daychild,* 357 F.3d at 1093-94). It additionally appears based on the Court's Order granting the Motion to Determine Competency (Doc. 32) in which the Court found excludable time starting on 5/2/2024 related to that motion. Upon review, the Court finds the motion (Doc. 25) and related motion to file under seal (Doc. 24) were filed on 5/1/2024, marking the date excluded time started for those motions under 18 U.S.C. § 3161(h)(1)(D), not 5/2/2024. To the extent Defendant may be counting the excluded time from the date of the Order (5/3/2024) because the Order stayed the case, the Court finds a distinction between a stay of proceedings and exclusion of time on the Speedy Trial clock.

**Reasonableness Of The Excess Transportation Time**

The Court finds the Government has not rebutted the presumption of unreasonableness for the 20 days for the trip to MDC-Los Angeles and for six of the nine days for the return trip, resulting in a total 26 days of unreasonable transport time. The Government argues the delay was due to safety and security concerns in transporting Defendant by commercial means. The hearing testimony confirms the basis for the argument is the JPATS notice. The Government's witness could not speak to those concerns outside the notice. Though the notice refers to a higher risk to the public in using commercial air travel, implying commercial means were not appropriate for transporting Defendant, the notice does not refer to Defendant other than to state Defendant's transport would be delayed. Though there may well have been safety and security concerns related to Defendant necessitating non-commercial travel, the Government has not established how such safety and security risk resulted in the excess transport time. "[D]elays to accommodate the USMS, in its desire to effect economical transportation of prisoners in larger groups, are not excludable under the Act." *Taylor,* 821 F.2d at 1384.

However, the Court does find the Government has overcome the presumption for three days of the return trip. The medical study timeline (Government's Exhibit 1) and Defendant's testimony establish Defendant was hospitalized for three days of the return trip. It is reasonable that he was not transported during that time. Beyond those three days, the Government does not establish that the medical issues affected the transportation time.

### **Time Left On The Speedy Trial Clock**

The Court finds the clock has not expired on the Cyberstalking charge. Despite the finding of unreasonable transport time, all travel time from MDC-Los Angeles back to CCA-Florence should be excluded. The entire return trip falls within excluded time from the Motion to Withdraw filed on 9/3/2024 (Doc. 49), 15 days before the Court's transport Order on 9/18/2024 (Doc. 51), and decided on 10/17/2024 (Doc. 57), 10 days after Defendant arrived back at CCA-Florence. *See United States v. Tewid,* 2003 WL 22717994, 86 F. App'x 224, 225 (9th Cir. Nov. 13, 2003) (challenged transport time excluded as having occurred during other excluded time "regardless of the merits of [the] issue"). Though the Motion to Withdraw (Doc. 49) was ordered withdrawn on 10/17/2024 (Doc. 57), the time for disposition of the motion by withdrawal is excluded under 18 U.S.C. § 3161(h)(1)(D). *See* 18 U.S.C. § 3161(h)(1)(D) (excluding delay from *any* pretrial motion); *United States v. Williams,* 557 F.3d 943, 947 (8th Cir. 2009); *United States v. Margheim,* 770 F.3d 1312, 1322 (10th Cir. 2014). The exclusion of the return trip puts the clock for the Cyberstalking charge at 63 days (20 excess days for the trip to MDC-Los Angeles plus the 43 days on the clock), leaving seven days for trial on the Cyberstalking charge.

The Court also finds the Speedy Trial clock has not expired on the Interstate Stalking charge. Adding the 20 excess days for the trip to MDC-Los Angeles to the 20 days on the clock for that charge, and excluding the return trip, the clock is at 40 days, leaving 30 days for trial on the Interstate Stalking charge.

Even if the entire return trip were not excluded, the Court still finds no Speedy Trial violation. Excluding the three hospitalization days, the trial clock would be at 69 days for the Cyberstalking charge, leaving one day for trial on that charge, and at 46 days for the

Interstate Stalking charge, leaving 24 days for trial on that charge.

## IV.    RECOMMENDATION

For the foregoing reasons, it is recommended that, after its independent review of the record, the District Judge DENY the Motion to Dismiss (Doc. 66).

The parties may serve and file written objections within 14 days. If objections are not timely filed, the party's right to *de novo* review may be waived. No reply to objections shall be filed unless leave is granted from the District Court.

Dated this 17th day of January, 2025.

Honorable Michael A. Ambri
United States Magistrate Judge