TIMOTHY COURCHAINE
United States Attorney
District of Arizona
LIZA M. GRANOFF
Florida Bar No.: 0159433
JOSH A. C. ACKERMAN
Arizona Bar No.: 020088
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: liza.granoff@usdoj.gov
Email: josh.ackerman@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-24-1182-TUC-AMM (MAA) |
| Plaintiff, | |
| vs. | GOVERNMENT'S TRIAL BRIEF |
| Brian Thomas Balda, | |
| Defendant. | |

Pursuant to the Court's Amended Scheduling Order (Doc. 117), the United States of America, by and through its undersigned attorneys, hereby submits its trial brief.

I.   Statement of the Facts

From 2023 to on or about February 15, 2024, Person A, a resident of Tucson, Arizona, started receiving iMessages from an individual with phone number ending in -8790 that were odd in nature. Initially, Person A ignored the messages. On one occasion, Person A mistakenly picked up the phone when that number called and reported that Person A had spoken to a male caller although Person A could not recall what they spoke about.

On December 4, 2023, Person A contacted law enforcement when Person A received a message from that same number that caused Person A to become concerned for Person A's safety. The message stated: "It's a great day to DIE tell [PERSON A] he's a pedophile and all of you helped you sick fucks this is the most disgusting thing I cannot

take secrets and all this shit you WIN ANNE YOU FUCKING WIN I HOPE YOURE FINALLY HAPPY PEACE." Later that day, Person A received other messages from the same sender.

On December 7, 2023, Person A received the following message from the same number:

> How bout you all just kill me with passion like you had in 1977 I should be dead long time ago besides who would ever want to be a living lie. Dead men tel no tales and no one will ever tell me anyways so just have your soldiers just take me out of your life and you're GAME with a child's life. Go to hell you fucking child molesting baby thief go fuck yourself scumbag mother fucker I'm sick of your shit [Person A] Fuck this country of secret keeping EVIL SICKOS HOW MANY KIDS ASSHOLE HOW FUCKING MANY YOU PRICK.

On December 9, 2023, Person A received a voicemail from the same phone number. The caller referred to the family name of "Balda" and ended the message by stating, "you're an asshole and I think you should pay for what you did."

On January 19, 2024, Person A received an iMessage from iCloud account brian.balda@icloud.com. The writer claimed he should have been aborted as a child and not allowed to be born, that he wants to die a slow and painful death and mentioned Person A by name. The message read in part: "[Person A] you are a coward just like all the Balda's and Hoffmann's anticommunist cowards."

Legal process confirmed the subscriber for phone number ending in -8790 was the defendant, Brian Thomas Balda. Corresponding records for that account showed the call and text message history records and showed logs of multiple calls and text messages sent to the phone number belonging to Person A over the 2023 calendar year and into 2024.

On February 14, 2024, Person A received a voicemail from a person claiming to be "Brian Balda" from a phone number with area code 520. Balda's voicemail stated he was in Phoenix, Arizona.

On the morning of February 15, 2024, Person A received a text message from the same phone number. The message stated the subject was now in Tucson, Arizona.

That afternoon, Person A received a voicemail from the same 520 number where the defendant identified himself as the caller and said he was in the Tucson area looking for Person A's real estate office. The defendant ended the message saying, "you and I need to have a chat."

The defendant's phone records show that from August 2023 to his arrest on February 16, 2024, he sent Person A at least 11 separate text messages and left at least four audio messages.

II.     Stipulations

The parties have reached an agreement regarding certain facts and evidence, listed below. The parties will continue to work together as they prepare for trial to see whether they can reach any additional stipulations regarding facts or evidence and will advise the Court accordingly.

   a. Cellphone Foundation (Person A's phone) - Federal Bureau of Investigation (FBI) Special Agent Eric Campbell performed an extraction of Person A's (Person A's) cellphone ending in -3961. A full and complete copy of the extraction was provided to both parties. Both parties stipulate that the extraction report of Person A's cellphone, or any portion thereof, shall be received in evidence at trial of this matter without need for further foundational evidence as to the process of the extraction or the chain of custody.

   b. Cellphone Foundation (defendant's phone) - FBI Special Agent Patrick Cullen performed an extraction from Brian Thomas Balda's (the defendant's) cellphone ending in -8790. A full and complete copy of the extraction was provided to both parties. Both parties stipulate that the extraction of the defendant's cellphone, or any portion thereof, shall be received in evidence at trial of this matter without need for further foundational evidence as to the process of the extraction or the chain of custody.

   c. Body-Worn Camera Videos - On February 16, 2024, at approximately 7:03 am, a University of Arizona Police Department (UAPD) officer received an alert for

a Black 2013 Cadillac SRX with Oregon license plate number 486 PNJ headed westbound in Tucson, Arizona in the area of East 1st Street and North Campbell Avenue. UAPD officers pulled over the Cadillac and identified the driver as the defendant, Brian Thomas Balda. The UAPD officers who were involved in the defendant's stop and detention activated their body-worn cameras. The parties stipulate that the body-worn camera footage, or any portions thereof, accurately depict events on February 16, 2024, and shall be received into evidence at trial without need for further foundational evidence. The parties' stipulation as to foundation provides it does not waive the defendant's right to object to all or portions of the body-worn camera video footage on other grounds, such as relevance or prejudice outweighing any probative value. The defense filed motion moving to preclude the body-worn camera videos on March 17, 2025. (Doc. 141.)

### III.  Legal Issues

The Ninth Circuit does not have standard jury instructions for either the stalking or cyberstalking statute, 18 U.S.C. §§ 2261A(1) and A(2), respectively.

The jury instruction proposed by the government for the cyberstalking count has been recently used by district courts in the Ninth Circuit and upheld on appeal in two unpublished decisions, including one this year. See, *United States v. Isho*, 2024 WL 135247 (9th Cir. 2024) (unpublished) and *United States v. Diaz,* 2025 WL 275117 (9th Cir. 2025) (unpublished). The Court here should adopt the government's proposed cyberstalking instruction in its entirety since that instruction has already passed appellate scrutiny by the Ninth Circuit.

For the stalking count, the government proposes the standard model jury instruction used by the Fifth Circuit. The Fifth Circuit's cyberstalking instruction similarly tracks the cyberstalking instruction upheld by the Ninth Circuit in its two recent opinions, *infra.* It is therefore logical and reasonable for the Court to use the Fifth Circuit's model instruction for a separate subsection of the same statute that has already been scrutinized and upheld

by the Ninth Circuit. The Court should adopt the government's proposed stalking instruction in its entirety.

The defense does not oppose the proposed instructions. Rather, the defense proposes adding definitions to the instructions that have not been used by either the Ninth or Fifth Circuit in stalking or cyberstalking cases. Instead, the defense relies on caselaw from the Eleventh Circuit that analyzed a threats case charged under 18 U.S.C. § 875(c), not a cyberstalking or stalking charge, to support their argument that the Court should instruct the jury on commonly used words like "harass," "intimidate," and "substantial emotional distress." However, the defense ignores that the case they rely upon, *United States v. Fleury,* 20 F.4th 1325 (11th Cir. 2021), specifically stated that the true threats language they were using for their *mens rea* requirement in the instructions did not apply to the charge of cyberstalking. Instead, the *Fleury* Court said, that "the plain language of § 2661A(2) establishes a *mens rea* requirement sufficient "to separate wrongful conduct from 'otherwise innocent conduct.'" *Id.* at 1326, *citing Elonis*, 575 U.S. 73, 76 (2015). Thereby, the *mens rea* requirement needed in a threats case is not necessary in a cyberstalking or stalking charge where the statute specifically includes a *mens rea* requirement. The government would also note that the instant offenses do not allege any kind of a threat, true or otherwise, thereby making the defense's proposed language inapplicable to this case.

The parties' respective positions on these issues are included in the joint instructions filed on March 20, 2025. (Doc. 152.)

IV.   Evidentiary Issues

The government has identified several evidentiary issues that may arise during trial as listed and explained below.

    a. Then existing state of mind of Person A. Person A in this case is expected to be unavailable for trial due to ailing health reasons. The government intends to elicit testimony from Person A's son regarding Person A's state of mind upon receiving the defendant's continued communications. Testimony from Person A's son regarding the fears expressed to him by Person A when he received the

messages from the defendant are admissible hearsay. *See United States v. Brown*, 122 F.4th 290 (8th Cir. 2024) (a deceased cyberstalking Person A's statements about being in fear are admissible under Federal Rules of Evidence (FRE) 803(3) state of mind exception to the hearsay rule.). Hearsay is generally inadmissible unless the statements fall within the listed exceptions to the hearsay rule. Fed. R. Evid. 801, 803. State of mind is one of the listed exceptions. Fed. R. Evid. 803(3). Under FRE 803(3), a declarant's statement regarding his current mental or physical condition, sensation, emotion, thought or plan is admissible as a hearsay exception. If the statements referred to the declarant's then current thought and mental condition, the statements are admissible through a third party. *Brown,* 122 F.4th at 296. Here, the statements made by Person A to his son about his then current fears are admissible at trial.

b. <u>Cumulativeness</u>. The government disclosed several body-worn camera (BWC) recordings to the defense documenting the defendant's arrest on February 16, 2024. To avoid presenting cumulative evidence, the government intends to introduce at trial only a select number of clips of the BWC footage of the defendant's arrest by University of Arizona Police Department and the Federal Bureau of Investigation (FBI). As stated previously, on March 17, 2025, the defendant filed a motion to preclude the body-worn camera videos alleging irrelevance, cumulativeness, and overly prejudicial grounds. (Doc. 141.) The government filed a response on March 21, 2025, rebutting the defendant's claims. (Doc. 155.) The videos are directly relevant to the charges against the defendant because the government must prove that Person A's fear was reasonable considering the defendant's course of conduct. The defendant's unprovoked violent behavior during his arrest offers proof that Person A's fear of the defendant was reasonable considering the defendant's continued harassment and intimidation of Person A. The highly probative nature of the BWC footage is not outweighed, much less substantially outweighed, by risk of

unfair prejudice given the crimes with which the defendant is charged and his repeated harassment and intimidation of Person A. The videos prove the defendant's course of conduct, as vividly depicted, would be reasonably expected to cause substantial emotional distress to Person A and that the defendant's actions and behavior placed Person A in reasonable fear of his own death or of serious bodily injury. To reduce any possible prejudice, the government (i) selected a relatively small sampling of the footage to use at trial, (ii) is not using most of the footage which comprises of four separate videos and over 2.5 hours in duration, and (iii) has redacted information relating to the defendant's date of birth and outstanding warrants.

V. <u>Other Pertinent Issues.</u>

On March 18, 2025, the Court granted the defendant's motion to compel the attendance of Person A at trial (Doc. 127) and ordered the Clerk's Office to issue a trial subpoena. (Doc. 146.) In its Order, the Court allowed the government to file a motion to quash the subpoena under seal. *Id.* On March 24, 2025, the government filed its motion to quash with supporting documents under seal.

Respectfully submitted this 25th day of March 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Liza M. Granoff*

LIZA M. GRANOFF
JOSH A. C. ACKERMAN
Assistant U.S. Attorneys

Copy of the foregoing served electronically or by other means this 25th of March 2025 to:

All ECF Recipients